NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000246
30-JUN-2017
02:13 PM

NO. CAAP-16-0000246

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
JON RIKI KARAMATSU, Defendant-Appellant.


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(HONOLULU DIVISION
(CASE NO. 1DTA-15-01669)


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Fujise, J., with
Reifurth, J., concurring separately)

Plaintiff-Appellee State of Hawaiʻi (State) charged Defendant-Appellant Jon Riki Karamatsu (Karamatsu) with operating a vehicle under the influence of an intoxicant (OVUII) (Count 1) and refusal to submit to testing (Count 2). At the time of the charged offenses, Karamatsu was employed as Deputy Prosecuting Attorney. Count 2 was dismissed pursuant to a motion from the State, and the case proceeded to trial on Count 1.

After a bench trial, the District Court of the First Circuit (District Court)[1] found Karamatsu guilty as charged of OVUII, in violation of Hawaii Revised Statutes (HRS) § 291E-

---

[1] The Honorable David W. Lo presided.

61(a)(1) (2007).[2/] The District Court sentenced Karamatsu to five days of imprisonment, 72 hours of community service, license revocation for one year, and a $1,000 fine. The District Court entered its Judgment on March 2, 2016.

On appeal, Karamatsu contends that: (1) there was insufficient evidence to show that he operated his truck while impaired; (2) the District Court failed to obtain a valid waiver of his right to testify as required by Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995); (3) the OVUII charge was defective for failing to define the term "alcohol"; (4) there was insufficient evidence to prove that he was impaired by "alcohol" under his reading of the term's statutory definition; and (5) the roadblock at which he was stopped was illegal because it failed to comply with statutory requirements. We affirm.

BACKGROUND

I.

The following evidence was presented at trial. On April 4, 2015, at approximately 1:00 a.m., Karamatsu, who was then a Deputy Prosecuting Attorney, encountered a Honolulu Police Department (HPD) intoxicant control roadblock on Ala Moana Boulevard in the area where it passes over the Ala Wai Canal. Karamatsu was driving his Frontier Nissan pickup truck Ewa-bound on Ala Moana Boulevard when he encountered the roadblock.

Karamatsu was instructed to pull his truck parallel to the curb in the holding area established in the two far right lanes. Because there was a car in front on him, Karamatsu could not comply with these instructions, and he stopped at an angle to the curb. When the car in front of Karamatsu cleared the holding

---

[2/] HRS § 291E-61(a)(1) provides:

    (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

    (1)    While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

area, Sergeant Prudencio Dela Cruz (Sgt. Dela Cruz) signaled with his flashlight for Karamatsu to move forward. Sgt. Dela Cruz testified that Karamatsu did not move and just stared straight ahead.

According to Sgt. Dela Cruz, he approached Karamatsu's truck to tell Karamatsu to move forward. Karamatsu was sitting in the driver's seat. From a distance of two to three feet, Sgt. Dela Cruz detected a strong odor of alcohol coming from the truck. Sgt. Dela Cruz observed that Karamatsu "had red, bloodshot eyes. He's red. And he was, like, shiny. Shiny face."

When Sgt. Dela Cruz told Karamatsu to move his truck, Karamatsu just stayed there "like in a daze." Sgt. Dela Cruz had to ask Karamatsu to move three or four times before Karamatsu moved forward to park along the curb. Sgt. Dela Cruz asked Karamatsu if he had had anything to drink, and Karamatsu said that he "had a drink earlier in the evening." In speaking with Karamatsu, Sgt. Dela Cruz detected "a strong odor coming from his mouth or breath."

Sgt. Dela Cruz instructed HPD Officer Lynelle Arakawa (Officer Arakawa) to administer field sobriety tests to Karamatsu. Officer Arakawa testified that upon approaching Karamatsu, she noticed that his eyes were red and glassy, and she smelled an odor of alcohol coming from him. Officer Arakawa asked Karamatsu if he would perform field sobriety tests, and he agreed to do so. On the heel-to-toe test, Karamatsu stood with his feet apart while receiving instructions after being told to stand with his feet together; attempted to start the test before Officer Arakawa had completed her instructions; missed heel-to-toe while performing the test; stopped during the test to ask if he was doing it correctly; and did not execute the turn as he had been instructed.

Officer Arakawa testified that because Karamatsu showed signs of impairment while performing the heel-to-toe test, she continued on to the one-leg-stand test. On the one-leg-stand

3

test, Karamatsu put his foot down once and swayed from side to side throughout the test. Based on Officer Arakawa's observations of Karamatsu, it was her opinion that Karamatsu showed signs of impairment and that he was not able to safely operate his vehicle.

After the field sobriety tests, Karamatsu agreed to submit to a preliminary alcohol screening (PAS) test, which required him to provide a breath sample. Sgt. Dela Cruz administered the PAS test, and he instructed Karamatsu to blow "as hard as you can" into the machine "like blowing into a balloon[.]" Although Karamatsu agreed to participate in the PAS test, Sgt. Dela Cruz testified that he had difficulty getting a reading because Karamatsu "didn't give [a] sufficient sample" and was "messing up the machine[.]" Sgt. Dela Cruz described Karamatsu's conduct as follows:

> But what happened is he didn't give sufficient sample, or he blew, and then he stopped, and then the machine doesn't have enough sample to -- to take a reading. And then he would blow, pretending he would be blowing and then would -- there's no sample going into the machine. Or he's blocking the mouthpiece itself with his tongue and pretending he was blowing. So it -- it took a while . . . until we got a sample from him.[3/]

## II.

At the conclusion of the trial, the District Court made findings of fact and announced its guilty verdict as follows:

> Okay. The Court has heard testimony of the State's two witnesses. Considered stipulation between the parties. Reviewed the State's Exhibits 1, 2, and 3 and Defendant's Exhibit H. Considering all the evidence and arguments between the parties, the Court will make the following findings:
>
> The subject roadblock was properly set up in the city and county of Honolulu, that it was administered -- administered properly. The roadblocks had adequate lighting, and the lack of some street lighting was not a factor -- is not a factor.
>
> After the defendant was directed into the holding area and it was time for him to pull forward to the checkpoint

---

[3/] When the State asked Sgt. Dela Cruz whether Karamatsu passed the PAS, the defense objected, and the District Court sustained the objection. The results of the PAS were not elicited at trial.

4

area, as directed by law enforcement, he remained sitting in a daze, staring ahead. He had to be asked by Sergeant Dela Cruz three to four times to move forward, after which Detective -- Sergeant Dela Cruz detected a strong odor of alcohol, red, watery eyes, shiny face. Defendant admitted to drinking earlier in the evening. And during the administration of the PAS, Defendant did not comply with the sergeant's instructions, either, quote, pretending to perform or blow into it or playing with it, unquote. While the defendant did eventually provide a sufficient sample, it took him a while to do so.

With respect to the walk-and-turn, the defendant was instructed to stand with feet together. Defendant had his feet apart. Defendant missed heel-to-toe. Was told not to stop. Defendant stopped. Defendant was told to take short, choppy steps on the turn. Defendant turned on the balls of his feet. Defendant was told not to start until directed. Defendant started while Officer Arakawa was still giving instructions.

With respect to the one-legged stand, Defendant swayed throughout the entire 30 seconds and put his foot down.

Based on the indicators of impairment under the walk-and-turn and one-legged stand, coupled with Defendant not moving forward when directed to do so by law enforcement, was sitting there, staring with a glaze [sic], and only did so after being told several times, and with other indicators of Defendant admitting to drinking, strong odor of alcohol, red, watery, bloodshot eyes, the Court finds the defendant was impaired beyond a reasonable doubt and finds Defendant guilty as charged.

DISCUSSION

I.

Karamatsu argues that there was insufficient evidence to show that he operated his truck while impaired. We disagree.

In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the State. State v. Ildefonso, 72 Haw. 573, 576, 827 P.2d 648, 651 (1992). "The test on appeal is not whether guilt [was] established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." State v. Eastman, 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996).

Here, there was substantial evidence to support the District Court's findings that Karamatsu operated his vehicle while impaired and that Karamatsu was guilty as charged. As explained by the District Court in rendering its verdict, this evidence included indicators and signs of impairment revealed by

Karamatsu's performance on the walk-and-turn and one-leg-stand tests; his delayed and inattentive reaction to directions provided by law enforcement to move his truck in the roadblock holding area; his admitting to drinking; the strong odor of alcohol detected on his breath; and his red, watery, bloodshot eyes. We conclude that there was sufficient evidence to support Karamatsu's conviction.

## II.

Karamatsu argues that the District Court failed to obtain a valid waiver of his right to testify as required by Tachibana. In particular, Karamatsu contends that the District Court's "ultimate" Tachibana colloquy was defective because the District Court did not engage Karamatsu in a "true colloquy" before obtaining his waiver of the right to testify. We reject Karamatsu's "true colloquy" claim.

## A.

Just prior to the State calling its first witness, the District Court advised Karamatsu as follows:

> THE COURT: All right. Mr. Karamatsu, you're familiar with the Tachibana colloquy; correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Nevertheless, I will so advise you that you have the right to testify on your own -- in your own defense. Although you should consult with your attorney regarding the decision to testify, it is your decision, and no one can prevent you from testifying, should you choose to do so. If you decide to testify, the prosecutor -- prosecutor will be allowed to cross-examine you.
>
> Have you discussed your right to testify with your attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you have any questions regarding your right to testify?
>
> THE DEFENDANT: No.
>
> THE COURT: You also have a constitutional right not to testify and to remain silent. If you choose not to testify, the Court will not hold your silence against you in deciding your case.
>
> Have you discussed your right to not testify with your attorney?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions regarding your right not to testify?

THE DEFENDANT: No.

THE COURT: All right. I will briefly question you later, and you must tell me at that time whether you will testify or not testify.

All right?

THE DEFENDANT: Okay.

Shortly before the defense rested its case, the District Court engaged in the following "ultimate" Tachibana colloquy with Karamatsu:

THE COURT: . . . . All right. Mr. Karamatsu, as I discussed with you before the start of trial, you have a constitutional right to testify in your own defense. Although you should consult with your attorney regarding the decision to testify, it is your decision, and no one can prevent you from testifying, should you choose to do so. If you decide to testify, the prosecutor will be allowed to cross-examine you.

You also have a constitutional right not to testify and to remain silent. If you choose not to testify, the Court cannot hold your silence against you in deciding your case.

Have you made a decision to testify or remain silent?

[DEFENSE COUNSEL]: Your Honor, could I have just, like, one or two minutes with him?

THE COURT: Go ahead.

[DEFENSE COUNSEL]: Thank you.

. . . .

THE COURT: We'll go off record for a minute.

(Pause in proceedings.)

. . . .

[DEFENSE COUNSEL]: Your Honor, I did speak to Mr. Karamatsu, and I think it's the decision not to testify.

THE COURT: All right. Mr. Karamatsu, before we took a short recess and you had the opportunity to consult with your lawyer, I asked you whether or not you made a decision to remain silent or testify.

Have you made a decision?

THE DEFENDANT: Yes, Your Honor.

7

THE COURT:  And what is your decision?

THE DEFENDANT:  Not to testify, Your Honor.

THE COURT:  And that is your decision; is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  On the advice of counsel?

THE DEFENDANT:  Yes.

B.

Citing the Hawai'i Supreme Court's decisions in State v. Han, 130 Hawai'i 83, 306 P.3d 128 (2013), and State v. Pomroy, 132 Hawai'i 85, 319 P.3d 1093 (2014), Karamatsu argues that the District Court did not engage in a "true colloquy" as required by Tachibana at the end of the case.  Karamatsu argues that "[i]nstead of pausing after each individual right/advisement and ascertaining that Karamatsu understood before proceeding, the court lumped the rights/advisements into two litanies[.]" Karamatsu also asserts that the District Court failed to determine whether Karamatsu properly understood each individual right/advisement.  Karamatsu claims that because the District Court failed to engage Karamatsu in a "true colloquy" and confirm that he understood his rights, there "is no basis on the record to determine" whether Karamatsu validly waived his right to testify.  Karamatsu argues that because the District Court failed to obtain a valid waiver of his right to testify, he is entitled to have his OVUII conviction overturned.

We reject Karamatsu's challenge to the validity of his waiver of his right to testify.  In order to determine the validity of a waiver of a fundamental right, we "'will look to the totality of the facts and circumstances of each particular case.'"  Han, 130 Hawai'i at 89, 306 P.3d at 134 (citation omitted).

Here the record shows that at the time of the charged incident, Karamatsu was not only a lawyer, but a Deputy Prosecuting Attorney.  The record also reflects that as a Deputy Prosecuting Attorney, Karamatsu reviewed cases and screened them,

8

and that he also handled OVUII cases. Under these circumstances, it is apparent that Karamatsu understood and validly waived his right to testify.

### III.

Karamatsu contends that the statutory definition of the term "alcohol" applicable to his OVUII charge is limited to alcohol that is the product of distillation of a fermented liquid.[4] Under Karamatsu's reading of the statutory definition, alcoholic beverages such as beer and wine, which are not produced through distillation, would not fall within the definition of alcohol, and persons who became intoxicated and drove after drinking beer or wine could not be prosecuted for OVUII.

Based on his interpretation of the statutory definition of alcohol, Karamatsu contends that his OVUII charge was defective and failed to give him fair notice of the accusation against him because the charge did not include a definition of alcohol that limited the term to alcohol that is the product of distillation of a fermented liquid. He further contends that there was insufficient evidence to support his conviction because the State did not prove that he became impaired as the result of consuming alcohol that was the product of distillation of a fermented liquid. We conclude that Karamatsu's restrictive reading of the statutory definition of the term alcohol is wrong. Accordingly, his arguments that the OVUII charge was defective and the evidence was insufficient, which are based on his erroneous interpretation of the statutory definition, are without merit.

---

[4] At the time relevant to this case, HRS § 291E-1 defined the term "alcohol" for purposes of the OVUII offense as follows:

"Alcohol" means the product of distillation of any fermented liquid, regardless of whether rectified, whatever may be the origin thereof, and includes ethyl alcohol, lower aliphatic alcohol, and phenol as well as synthetic ethyl alcohol, but not denatured or other alcohol that is considered not potable under the customs laws of the United States.

This court's decision in State v. Tsujimura, 137 Hawai'i 117, 366 P.3d 173 (App. 2016), vacated on other grounds, No. SCWC-14-0001302, 2017 WL 2361154 (Hawai'i May 31, 2017), is directly on point and refutes Karamatsu's claims. In Tsujimura, this court rejected the same argument regarding the statutory definition of the term "alcohol" that Karamatsu raises in this appeal. Like Karamatsu, Tsujimura argued that "the definition of alcohol for purposes of HRS Chapter 291E only includes alcohol that is the product of distillation, such as distilled liquor, and does not include beer or wine, which are not produced through distillation." Tsujimura, 137 Hawai'i at 120, 366 P.3d at 176. We rejected Tsujimura's argument, and we held that: "Contrary to Tsujimura's contention, the statutory definition of alcohol is not limited to alcohol that is the product of distillation, but also specifically includes ethyl alcohol, which is 'the intoxicating agent in beer, wine and other fermented and distilled liquors.'" Id. (citation and brackets omitted).

On certiorari review, the Hawai'i Supreme Court recently affirmed this aspect of our decision in Tsujimura. The supreme court stated:

> Contrary to Tsujimura's contention, the statutory meaning of "alcohol" is not circumscribed to alcohol derived from distillation. . . .
>
> . . . . [Under the statutory definition,] "alcohol" means "the product of distillation of any fermented liquid, regardless of whether rectified, whatever may be the origin thereof." And "alcohol" also "includes ethyl alcohol, lower aliphatic alcohol, and phenol as well as synthetic ethyl alcohol" regardless of whether they are products of distillation. . . .
>
> . . . . [T]he meaning of "alcohol" is inclusive of ethyl alcohol, also commonly known as ethanol, which "is the intoxicating agent in beer, wine, and other fermented and distilled liquors." Accordingly, the statutory definition of "alcohol" includes beer, wine, and other fermented liquors because these substances contain ethanol.

Tsujimura, 2017 WL 2361154, at *6-7 (footnotes omitted).

In Tsujimura, we also rejected Tsujimura's claims that were premised on his erroneous reading of the statutory definition of alcohol, namely, his claims that his OVUII charge

was defective for failing to define the term "alcohol" and that there was insufficient evidence that he had consumed "alcohol" as defined by statute. Tsujimura, 137 Hawai'i at 120-22, 366 P.3d at 176-78. These are the same claims raised by Karamatsu in this appeal. We conclude that our decision in Tsujimura is dispositive. Based on our decision in Tsujimura, which was affirmed in pertinent part by the Hawai'i Supreme Court, we conclude that Karamatsu's restrictive reading of the statutory definition of "alcohol" applicable to this case is wrong.[5] We further conclude that Tsujimura's claims regarding the validity of the OVUII charge and the sufficiency of the evidence, which are predicated on his erroneous reading of the statutory definition, are without merit.[6]

IV.

Karamatsu argues that the roadblock at which he was stopped was illegal because it failed to comply with the minimum standards for roadblocks set forth in HRS § 291E-20 (2007).[7] In

---

[5] Because the statutory definition of alcohol applicable to this case includes ethyl alcohol, we reject Karamatsu's claim that the OVUII statute (HRS § 291E-61) would be rendered unconstitutionally vague if, at the time of his charged offense, the OVUII statute was applied to driving under the influence of alcoholic beverages such as beer or wine that were not the product of distillation.

[6] We are troubled by the failure of Karamatsu's counsel to cite this court's decision in Tsujimura in Karamatsu's brief on appeal. At the time Karamatsu's counsel filed the opening brief, this court's decision in Tsujimura constituted controlling authority regarding Karamatsu's claims relating to the statutory definition of alcohol. Moreover, as the State notes, Karamatsu's counsel was also appellate counsel for the defendant in Tsujimura before this court and on certiorari review before the Hawai'i Supreme Court, and thus Karamatsu's counsel was clearly aware of this court's decision in Tsujimura. The Tsujimura appeal was still pending before the supreme court, and the supreme court had not rendered a decision, at the time Karamatsu's counsel filed the opening brief in this appeal.

[7] HRS § 291E-20 provides in relevant part:

(a) Every intoxicant control roadblock program shall:

(1) Require that all vehicles approaching roadblocks be stopped or that certain vehicles be stopped by selecting vehicles in a specified numerical sequence or pattern;

(continued...)

11

particular, Karamatsu contends that the roadblock failed to satisfy the requirements that: (1) all vehicles approaching the roadblock be stopped (or that vehicles be stopped in a specified numerical sequence or pattern); and (2) there be proper illumination at the roadblock. We disagree.

The District Court found that the roadblock was set up and administered properly. There was substantial evidence to support the District Court's finding.

The State presented substantial evidence that all vehicles approaching the roadblock were stopped. The State introduced the "Intoxication Control Roadblock Establishment and Operation" Report for the roadblock at issue in this case. The Report verifies that: "All motor vehicles approaching the roadblock were stopped[,]" and the Report was signed by both Sgt. Dela Cruz and Officer Arakawa. Sgt. Dela Cruz, who was in charge of the roadblock, testified that every car that approached the roadblock was stopped.

---

[2]/(...continued)
  (2) Require that roadblocks be located at fixed locations for a maximum three-hour period;

  (3) Provide for the following minimum safety precautions at every roadblock:

    (A) Proper illumination;

    (B) Off-road or otherwise safe and secure holding areas for vehicles involved in any roadblock stop;

    (C) Uniformed law enforcement officers carrying proper identification;

    (D) Adequate advance warning of the fact and purpose of the roadblocks, either by sign posts, flares, or other alternative methods;

    (E) Termination of roadblocks at the discretion of the law enforcement officer in charge where traffic congestion would otherwise result; and

  (4) Provide for a sufficient quantity and visibility of uniformed officers and official vehicles to ensure speedy compliance with the purpose of the roadblocks and to move traffic with a minimum of inconvenience.

In support of his claim that not all vehicles were stopped, Karamatsu cites the following testimony of Officer Arakawa:

> [Defense counsel] Q.  Okay.  Now, Sergeant Sakamoto isn't directing every vehicle into the holding area; correct?
>
> [Officer Arakawa] A.  The -- <u>like if the buses go by, then I guess they wouldn't fit, so he just checks them over there</u>.
>
> Q.  Okay.  But do you mean to say that every single vehicle pulls into the holding area besides buses?
>
> A.  It's supposed to be every vehicle goes through that's why.
>
> Q.  Every vehicle gets stopped, right, by Sergeant Sakamoto.
>
> But every vehicle also gets directed into the holding area?
>
> A.  Except the buses and -- oh, the big trucks, too.

(Emphasis added.)

Contrary to Karamatsu's contention, Officer Arakawa's testimony does not show that buses and big trucks approaching the roadblock were not stopped.  Rather, Officer Arakawa's testimony indicates that buses and big trucks were stopped, but were checked at a different location ("he just checks them over there") than cars, because they were too big to fit in the holding area where the cars were being checked.  Thus the portion of Officer Arakawa's testimony cited by Karamatsu does not negate the State's showing that all vehicles approaching the roadblock were stopped.

Karamatsu presented evidence that the streetlights in the area where the roadblock was established were not working at the time Karamatsu was stopped.  He claims that this shows that the illumination was not proper.  However, the District Court specifically found that the roadblock "had adequate lighting, and the lack of some street lighting was not a factor[.]"  We conclude that the State presented substantial evidence to show that there was proper illumination for the roadblock.  Sgt. Dela Cruz and Officer Arakawa both testified that the lighting at the

13

roadblock was adequate.  The State also presented evidence that the roadblock area was illuminated by flares, blue lights from police cars, and flashlights held by the officers.

CONCLUSION

Based on the foregoing, we affirm the District Court's Judgment.

DATED: Honolulu, Hawai'i, June 30, 2017.

On the briefs:

Alen M. Kaneshiro
for Defendant-Appellant.

Albert Cook
Deputy Attorney General
for Plaintiff-Appellee.

*Craig H. Nakamura*

Chief Judge

*Alexa D. M. Fujise*

Associate Judge


CONCURRING OPINION BY REIFURTH, J.

I concur in the result reached by the majority.

*Lawrence M. Reifurth*